890 A.2d 997 (2006)
383 N.J. Super. 99
Mary PERKINS, individually and on behalf of all other similarly situated, Plaintiff-Appellant,
v.
DAIMLERCHRYSLER CORPORATION, a Delaware Corporation, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 2005.
Decided February 8, 2006.
*998 Nyran Rose Pearson, Chicago IL, (Miller, Faucher and Cafferty) of the Illinois bar, admitted pro hac vice, argued the cause for appellant (Cooper, Levenson, April, Niedelman & Wagenheim, attorneys; Fredric L. Shenkman, Atlantic City, Marvin A. Miller, Ms. Pearson, and William R. Kane, on the brief; Greco, Traficante & Edwards, attorneys; Clyde C. Greco, Jr., Peter J. Schulz and Bay Baniadam, on the brief).
Kathy A. Wisniewski (Bryan Cave, LLP) of the Missouri bar, admitted pro hac vice, argued the cause for respondent (Youngblood, Corcoran, Lafferty & Hyberg, attorneys; Ms. Wisniewski, Randolph C. Lafferty, Pleasantville, and John W. Rogers, on the brief).
Before Judges A.A. RODRÍGUEZ, C.S. FISHER and YANNOTTI.[1]
The opinion of the court was delivered by
FISHER, J.A.D.
Plaintiff Mary Perkins (plaintiff) purchased a 1998 Jeep designed and manufactured by defendant DaimlerChrysler Corporation (defendant). At a time when the Jeep's odometer indicated it had already *999 been driven 108,000 miles, plaintiff filed a complaint alleging that she was defrauded, in violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, because defendant did not reveal that the vehicle was manufactured with a tubular steel exhaust manifold allegedly susceptible to cracking and premature failing, and unlikely to last for 250,000 miles, which, plaintiff claims without support, is the industry lifetime standard for such a part. Because this allegedly substandard part did not fail or require repair or replacement within the warranty period, we conclude that the complaint was properly dismissed.

I
Plaintiff filed her class action complaint on November 17, 2003, seeking damages on her own behalf as well as others similarly situated for violations of the CFA, and the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 2301 to 2312. Defendant removed the action to the United States District Court for the District of New Jersey, but the federal court remanded the matter back to state court.
Defendant thereafter moved for a dismissal of the complaint. On the initial return date, the trial judge indicated he would dismiss the Magnuson-Moss claim as well as plaintiff's claim for declaratory relief,[2] but requested additional briefing about the viability of the CFA claim. Following further submissions and additional argument, the trial judge concluded that plaintiff failed to meet the CFA's requirement of proof of an "ascertainable loss," N.J.S.A. 56:8-19,[3] and that, in essence, even if she had, the CFA does not permit the maintenance of a private cause of action based upon an alleged defect in a product's component that not only had never manifested its alleged inadequacies but also had, in fact, outperformed the vehicle's warranty period. An order of dismissal was entered on January 7, 2005.
Plaintiff's appeal of the order of dismissal requires that we consider the concept of "ascertainable loss," the scope of her claim against defendant, and those factors which, due to their absence from plaintiff's complaint, required dismissal. Although we conclude that the trial judge prematurely determined that plaintiff had failed to demonstrate an ascertainable loss, we agree that plaintiff failed to state a legally-cognizable claim because the allegedly substandard part fully performed during the warranty period and beyond.

II
The Attorney General may bring a CFA action for purely injunctive relief, but a private plaintiff must be able to demonstrate that "he or she suffered an `ascertainable loss . . . as a result of the unlawful conduct.'" Weinberg v. Sprint Corp., 173 N.J. 233, 237, 801 A.2d 281 (2002). See also Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 473, 541 A.2d 1063 (1988); Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271, 390 A.2d 566 (1978). As a result, the viability of a private CFA claim often turns on the question of whether a plaintiff is able to provide sufficient evidence of an ascertainable loss.
*1000 Recently, the Supreme Court referred to the CFA's requirement of an ascertainable loss as "enigmatic," observing "[t]here is little that illuminates the precise meaning that the Legislature intended in respect of the term `ascertainable loss' in [N.J.S.A. 56:8-19]." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 238, 248, 872 A.2d 783 (2005). See also Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11, 860 A.2d 435 (2004) (noting that it could not "ascribe a plain meaning to the term ascertainable loss, nor find legislative history that sheds direct light on those words"). After reciting dictionary definitions of "ascertain" and "ascertainable," the Court concluded that "[t]o give effect to the legislative language describing the requisite loss for private standing under the CFA, and to be consistent with Weinberg, a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." Thiedemann, supra, 183 N.J. at 248, 872 A.2d 783.
Here, plaintiff's complaint alleges that plaintiff's then five-year old Jeep,[4] which had been driven for over 100,000 miles, contains a less durable exhaust manifold than defendant should have incorporated, a fact which defendant did not disclose when the vehicle was purchased. The complaint's allegations, even when expansively viewed, do not include a claim that plaintiff has incurred any out-of-pocket expenses or other actual loss as a result of this condition of the vehicle. Rather, a fair interpretation of plaintiff's claim of an ascertainable loss is that her Jeep has a reduced resale value even though it has an undamaged and still useful tubular steel exhaust manifold instead of an exhaust manifold constructed with what plaintiff refers to as "proven, industry-standard cast iron" that, according to plaintiff, will normally last for 250,000 miles.
In considering the sufficiency of this claim, we are guided by Thiedemann, where the Court held that a claim of reduced value "will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." 183 N.J. at 248, 872 A.2d 783. It is enough, said the Court, that the loss "is quantifiable or measurable," and "it need not yet have been experienced as an out-of-pocket loss to the plaintiff." Ibid. As the Court explained:
[A] claim of loss in value must be supported by sufficient evidence to get to the factfinder. To raise a genuine dispute about such a fact, the plaintiff must proffer evidence of loss that is not hypothetical or illusory. It must be presented with some certainty demonstrating that it is capable of calculation, although it need not be demonstrated in all its particularity to avoid summary judgment.
. . . .
We can envision the possibility that an expert may be able to speak to a loss in value of real or personal property due to market conditions, with sufficient precision to withstand a motion for summary judgment.
[183 N.J. at 248-49, 872 A.2d 783.]

III
In determining the sufficiency of plaintiff's assertions about an ascertainable loss, we are required to consider the scope of her action. Plaintiff claims that her vehicle has a substandard part, but acknowledges that the part did not fail or *1001 generate any actual out-of-pocket losses during the warranty period, or by the time the complaint was filed on November 17, 2003, or even when she responded to the motion to dismiss filed nearly one year after the commencement of the action.[5] Despite the limits of her own personal claim, plaintiff also purports to speak for those New Jersey residents who presently own or lease Jeep Grand Cherokees for model years 1991 through 1999, which contained tubular steel exhaust manifolds, and either paid for repair or replacement of their exhaust manifolds or will need to pay for repair or replacement of the exhaust manifolds at some point in the future. Considering the proper scope of the CFA and the manner in which the concept of ascertainable loss has been viewed by our Supreme Court, we do not think it is appropriate to consider plaintiff to be a valid representative entitled to speak for anyone other than herself or those who purchased a Jeep with a tubular steel exhaust manifold that has uneventfully outlasted the vehicle's warranty period. That is the purported class which should be impacted by our decision and not those other alleged class members whose exhaust manifolds actually failed and which were repaired or replaced at their own actual cost.
We also deem the purported class overly-inclusive insofar as it attempts to include lessees of vehicles, including those who leased vehicles with exhaust manifolds that did not require repair or replacement. The Supreme Court recognized that lessees are in a different position regarding reduced resale value than are owners. See Thiedemann, supra, 183 N.J. at 253, 872 A.2d 783. A claim of a loss of value of a leased vehicle cannot constitute an ascertainable loss because such a plaintiff "is unable to advance an argument that [he or] she might be able to demonstrate loss in future resale value due to alleged, potentially defective replacement parts, assuming some proof to support that claim." Ibid. In other words, only the lessor, not the lessee, possesses a right to sell the vehicle. Thus, the lessee has no stake in the vehicle's actual value. In addition, whether a member of the broad class proposed by plaintiff has sustained actual losses during the warranty period, which the manufacturer has not honored, or even if the manufacturer has honored such a claim, may require a different approach to the ascertainable loss element than is appropriate in plaintiff's own particular situation.
In light of the way in which plaintiff's own claim materially departs from those of many other purported members of the class described in the complaint, we conclude that her proposed class is broader than appropriate or, stated another way, plaintiff is not an appropriate class representative of certain purported members. That is, we conclude that plaintiff is only an appropriate class representative for those purported class members who own vehicles whose exhaust manifolds have not failed but, instead, have exceeded the life of the vehicle's warranty without the need for repair or replacement. Having so defined the contours of plaintiff's claim, we consider whether a vehicle owner in such circumstances has a legitimate claim of an ascertainable loss.

IV
Although the claims considered in Thiedemann differ from those here presented, *1002 the guidance provided by that decision engenders grave doubts about plaintiff's allegation of an ascertainable loss. It is helpful, in this regard, to closely examine the specifics of the Thiedemann claims before turning to the application of its holdings to the case at hand.
In Thiedemann, the Court considered whether plaintiffs Brian and Barbara Flaherty had incurred an ascertainable loss when the allegedly defective part (a fuel gauge) was fully addressed by the dealer without expense to plaintiffs. The Court observed that the Flahertys had "experienced difficulties with inaccurate fuel gauge readings and, on at least two occasions, ran out of fuel while driving." Thiedemann, supra, 183 N.J. at 240, 872 A.2d 783. Their suit based upon this alleged defect was settled when they agreed to release their claim as part of "a key-for-key exchange" of their vehicle for a newer vehicle. Ibid. That is, the Flahertys "turned in [the allegedly defective 1999 model] for the newer 2000 model at no additional out-of-pocket cost and subject to the same financing terms as the 1999 vehicle, including credit for all payments made to date on the older vehicle." Ibid. Brian Flaherty also conceded "that he did not pay for the cost of repairs or for the loaner cars that were provided to him in connection with the 1999 Mercedes-Benz." Ibid. The Court also considered the subsequent circumstances alleged by the Flahertys, which it described in the following way:
Unfortunately, the Flahertys began to experience inaccurate fuel gauge readings with their newer C-280 model. After defendant made several repair attempts, the Flahertys were offered the opportunity to trade in their C-280 for a new Mercedes-Benz E-320. Although the 2000 Mercedes-Benz C-280 had 7,500 miles on its odometer, defendant agreed to value the vehicle as if it were new. Thus, an agreement was reached that permitted the Flahertys to upgrade their used vehicle by paying the difference in price between the Manufacturer's Suggested Retail Price for a new C-280 and for a new E-320. As with their 1999 vehicle, they incurred no out-of-pocket expenses in connection with the warranty repairs made to the 2000 Mercedes-Benz C-280 and they received a free loaner car whenever their vehicle was being repaired.
Notwithstanding the new make and model of their Mercedes Benz vehicle, the Flahertys again began to notice inaccurate fuel gauge readings. Unlike their earlier experiences when their vehicle's fuel gauge did not detect an empty tank, the E-320 fuel gauge would not disclose a reading above three-fourths of a tank even when the fuel tank was full. Mercedes-Benz repaired the problem in accordance with its warranty program and the motion record reveals that since then the Flahertys have not reported another fuel-sensor problem.
[Id. at 240-41, 872 A.2d 783.]
The Court determined that the Flahertys' inconvenience could not be equated with the CFA's requirement of an ascertainable loss. Id. at 251-52, 872 A.2d 783. In addition, the fact that all repairs were performed by the dealer pursuant to its warranty program at no cost to the Flahertys, and that loaner cars were provided to the Flahertys also at no cost, militated against an arguable claim of ascertainable loss. Id. at 252, 872 A.2d 783. As for the claim that an ascertainable loss was presented by the diminution in the value of their vehicle, the Court said the following:
The argument (and that is all that is proffered on this record) that there is a future hypothetical diminution in value in the E-320 due to a fuel gauge that at one time did not read properly a full *1003 tank of gasoline, is too speculative to satisfy the CFA requirement of a demonstration of a quantifiable or otherwise measurable loss as a condition of bringing a CFA suit. The Flahertys made no attempt to sell their vehicle. Nor did they present any expert evidence to support an inference of loss in value notwithstanding the lack of any attempt to sell the vehicle, i.e., that the resale market for the specific vehicle had been skewed by the "defect." The absence of any such evidence, presented with a sufficient degree of reliability to permit the trial court, acting as gatekeeper, to allow the disputed fact to proceed before a jury, was fatal to plaintiffs' claim.
[Ibid.]
We take from the Court's disposition of the Flahertys' claims, as well as the other claims therein asserted,[6] the following precept that should be applied here: a claim, such as plaintiff's, must fail in the absence of evidence that the resale market for the vehicle was "skewed" by the alleged defect in her tubular steel manifold exhaust. Here, plaintiff provided no evidence to support such a claim of diminution in value. Indeed, we question the sufficiency of a claim  even if an expert could be found to champion it  that one particular, allegedly substandard vehicle part that has been subjected to wear and tear for more than 100,000 miles, among many of the vehicle's other similarly situated parts, will have even a negligible impact on the resale value of a used five-year old vehicle. In such circumstances, a more than colorable argument could be asserted that such a claim of reduced resale value would be purely speculative or, if quantifiable, undoubtedly inconsequential and, thus, would not conform to Thiedemann's requirements.
But, unlike the Flahertys' claim in Thiedemann, plaintiff was faced with a defense motion, based on R. 4:6-2, which asserted that plaintiff had failed to state a claim upon which relief might be granted. In light of the procedures applicable to such a motion, the trial judge was required to accept the truth of plaintiff's allegations and, also, give plaintiff the benefit of all reasonable factual inferences. Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989); Independent Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89, 127 A.2d 869 (1956). This process requires that "the pleading be searched in depth and with liberality to determine whether a cause of action can be gleaned even from an obscure statement." Seidenberg v. Summit Bank, 348 N.J.Super. 243, 250, 791 A.2d 1068 (App.Div.2002). We have also observed that when "the legal basis for the claim emanates from a new or evolving legal doctrine," the judge should consider the motion with even greater trepidation. Ibid.
Here, plaintiff alleged in her complaint that she suffered an ascertainable loss. She did not allege the nature of that loss, *1004 nor was she so required at that stage. Defendant's motion to dismiss, unlike the summary judgment procedure, did not require, in order to avoid dismissal, that plaintiff provide evidential material to rebut defendant's contention that she had not sustained an ascertainable loss. In addition, the concerns we expressed in Seidenberg, i.e., that greater caution be exhibited before granting such a motion when the claim is based upon novel or evolving legal doctrines, are also applicable here. Thus, unlike Thiedemann, where the Court reviewed a summary judgment, we cannot affirm the dismissal of the complaint based upon plaintiff's failure to provide evidence of a diminution in value. Unlike the Flahertys in Thiedemann, who failed to provide such evidence in the face of a motion for summary judgment, in this case plaintiff was faced only with a R. 4:6-2 motion to dismiss, and her obligation to provide admissible evidence of a diminution in value had not arisen when the trial judge dismissed the complaint.

V
Notwithstanding the prematurity of any determination about ascertainable loss in the present matter, we nevertheless affirm the dismissal of the complaint because we agree in principle with the trial judge's determination that  absent those circumstances in which safety concerns might be implicated, as to which we offer no view  the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the CFA. Our determination is driven by the fact that, in this case, it was not alleged that the deterioration or failure of such a part represented a danger to others. It also was not alleged that the exhaust manifold has even actually required repair or replacement, and it was not alleged that defendant contractually agreed to repair or replace plaintiff's manifold exhaust beyond the requirements of its warranty program. Based upon the absence of any such allegations, we conclude that plaintiff can have no viable CFA cause of action. A defendant cannot be found to have violated the CFA when it provided a part  alleged to be substandard  that outperforms the warranty provided. As the Court said in Thiedemann, "[t]he defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate `loss' that the CFA expressly requires for a private claim under the CFA, bringing with it the potential for treble damages, attorney's fees, and the court costs and fees." 183 N.J. at 251, 872 A.2d 783. Similarly, a claim that a defect may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis for a claim under the CFA.
The logic of this holding is demonstrated by a consideration of what would have occurred if plaintiff had complained of the manifold exhaust prior to the expiration of the warranty period. In that case, should it have been determined that the manifold exhaust was defective and the warranty program required that it be replaced at defendant's sole cost and expense, and defendant so complied, then plaintiff would have no viable cause of action because she would have incurred no ascertainable loss, as Thiedemann instructs. She also would have suffered no diminution in value because the manifold exhaust would have been replaced with a new part (perhaps, with its own new warranty), which not only would not decrease its value but, arguably, would increase the vehicle's value. Similarly, plaintiff may not maintain a CFA claim  and pursue treble damages, attorneys' fees and costs of suit  when the allegedly substandard part continues to perform beyond defendant's contractual *1005 obligation to repair or replace it. Otherwise, plaintiff's right to relief from the defendant would actually, and illogically, increase the longer the vehicle and its component parts perform.
In short, recognizing a viable CFA claim in the circumstances presented would essentially compel manufacturers and sellers to warrant their products and component parts beyond that to which the parties expressly agreed. Courts do not rewrite contracts into which parties have freely and voluntarily entered. James v. Fed. Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950); Seaview Orthopaedics v. National Healthcare Resources, Inc., 366 N.J.Super. 501, 510, 841 A.2d 917 (App.Div.2004). To interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of the contract which defined the length and scope of the warranty period. We decline to interpret the CFA to permit a claim which has that effect.
In addition, the broad interpretation of the CFA urged by plaintiff would have the same effect which the Court prevented in Thiedemann, i.e., rendering meaningless the New Jersey Lemon Law Act, N.J.S.A. 56:12-29 to -49. Thiedemann, supra, 183 N.J. at 255, 872 A.2d 783. The Court recognized that these legislative enactments have, as an overarching purpose, the encouragement of "voluntary remedial programs" and establish "minimally what an automobile manufacturer must do." Ibid. That purpose would not be served by permitting the maintenance of lawsuits such as that at hand, which, if successful, not only would render inconsequential the warranty programs adopted by auto manufacturers and consented to by purchasing consumers, but would also have a tendency to extend those warranty programs for the entire life of the vehicle.
Accordingly, while our views differ slightly from the trial judge's, we agree in principle that the CFA, when applied to these circumstances, compels a dismissal of the complaint.
Affirmed.
NOTES
[1] Judge Yannotti did not participate at oral argument, but with the consent of all counsel, he participated in the decision of the court.
[2] Plaintiff has not appealed the dismissal of the Magnuson-Moss claim or her claim for declaratory relief.
[3] N.J.S.A. 56:8-19 states, in pertinent part, that "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction."
[4] The complaint, which was filed on November 17, 2003, alleged that plaintiff's vehicle was a 1998 model. We extrapolate from these statements that the vehicle was approximately five years old at the time the complaint was filed.
[5] Defendant moved to dismiss the complaint on September 3, 2004. Plaintiff filed opposition on October 13, 2004 and supplemental papers on December 23, 2004. In neither submission did plaintiff assert a failure with the exhaust manifold since the filing of the complaint approximately one year earlier.
[6] Another plaintiff whose claims were considered in Thiedemann was Yuet Lan Lam, who leased her vehicle for three years and who alleged stalling problems with her vehicle. Lam acknowledged "that the actual warranty work was performed at defendant's expense; however, she claim[ed] a `loss' in that she was required to pay a total of fifty-seven dollars for fuel used by defendant's technicians during diagnostics on the vehicle." Id. at 241 n. 4, 872 A.2d 783. The dismissal of Lam's claim was upheld because any repairs required were performed at defendant's sole expense. The Court also "refuse[d] to conclude that [Lam's] payment for the gas used during technicians' efforts to diagnose her car's problem constituted a `loss' of the sort that would support a CFA private claim." Id. at 253, 872 A.2d 783. In addition, as alluded to earlier, the fact that Lam leased her vehicle precluded any claim of a demonstrable "loss in future resale value." Ibid.