**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1174-19

MATTHEW ENRIQUEZ,
individually and on behalf
of all others similarly situated,

      Plaintiff-Appellant,

v.

JOHNSON & JOHNSON,
JANSSEN PHARMACEUTICALS,
INC., ACTAVIS PHARMA, INC.,
and ACTAVIS LLC,

      Defendants-Respondents.

_____

Argued October 21, 2021 – Decided November 12, 2021

Before Judges Alvarez, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4677-18.

J. Michael Connolly (Consovoy McCarthy, PLLC) of the Virginia and District of Columbia bars, admitted pro hac vice, argued the cause for appellant (Joshua M. Neuman, Tobias L. Millrood and Gabriel C. Magee (Pogust Millrood, LLC), J. Michael Connolly, William S. Consovoy (Consovoy McCarthy, PLLC) of the

Virginia and District of Columbia bar, admitted pro hac vice, Ashley C. Keller (Keller Lenkner LLC) of the Illinois bar, admitted pro hac vice, and Travis Lenkner (Keller Lenkner, LLC) of the Illinois bar, admitted pro hac vice, attorneys; Joshua M. Neuman, Tobias L. Millrood, Gabriel C. Magee, Kyle N. Thompson (Kilcoyne & Nesbitt, LLC), Ashley C. Keller, Travis Lenkner and William S. Consovoy, on the briefs).

Jonathan P. Schneller (O'Melveny & Myers LLP) of the California bar, admitted pro hac vice, argued the cause for respondents (Jonathan P. Schneller and Calcagni & Kanefsky, LLP, attorneys for Johnson & Johnson and Janssen Pharmaceuticals, Inc.; Morgan, Lewis & Bockius, LLP, attorneys for Actavis Pharma, Inc. and Atavis LLC; Eric T. Kanefsky, Walter R. Krzastek, Martin B. Gandelman, Harvey Bartle, IV, Mark Fiore and Brian M. Ercole, on the joint brief).

PER CURIAM

Plaintiff Matthew Enriquez appeals from an October 10, 2019 order dismissing his complaint with prejudice pursuant to Rule 4:6-2(e). We affirm.

In December 2018, plaintiff filed a class action suit against defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Actavis Pharma, Inc., and Actavis LLC. The proposed class was defined as "[a]ll current New Jersey citizens (including natural persons and entities) who purchased health insurance policies in New Jersey from 1996 through the present; and all current New Jersey citizens who paid for any portion of employer-provided health insurance from 1996 through the present." The complaint asserted causes of action for:

violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -226; public nuisance; unjust enrichment; negligence; and negligent interference with prospective economic advantage.[1]

The complaint alleged defendants fueled the opioid crisis in New Jersey, causing insurance companies to pay the costs of opioid medication and addiction treatment for their insureds, which increased premiums, co-pays, and deductibles for plaintiff and the other class members. It asserted defendants "manufacture[d], market[ed] and [sold] prescription opioids, . . . [and] engaged in a . . . deceptive marketing scheme to encourage doctors and patients to use opioids to treat chronic pain." It further claimed defendants "falsely minimized the risks of opioids, [and] overstated their benefits and generated far more opioid prescriptions than there should have been." Defendants allegedly represented that opioid addiction could be treated through use of opioids, misrepresented the signs of addiction, and suggested tapering or increasing opioid use as a valid means of treatment. Plaintiff asserted "[d]efendants knew that their misrepresentations about the risks and benefits of opioids were not supported by, and sometimes were directly contrary to, the scientific evidence."

---

[1] Plaintiff has not appealed the dismissal of the negligent interference with prospective economic damage count.

3                                                                                      A-1174-19

The complaint alleged "[d]efendants devised a scheme to misrepresent the risks and benefits of opioids to increase prescriptions by tapping into the large and lucrative market for chronic-pain patients." Further, defendants disseminated false and misleading information through: continuing medical education programs; advertisements targeting medical professionals and the public; websites; and direct sales and promotional communications with doctors and chronic-pain patients.

According to plaintiff, "[d]efendants created, funded, controlled, and operated third-party organizations that communicated directly with doctors and chronic-pain patients to promote opioid use generally without naming specific brands . . . [giving] the false appearance that the deceptive messages came from an independent and objective source." Third-party groups aided "[d]efendants by responding to negative articles, advocating against regulatory changes that would limit opioid prescriptions, and conducting outreach to vulnerable patient populations targeted by the [d]efendants." The complaint also alleged defendants recruited highly qualified medical professionals to spread misinformation "about the risks and benefits of opioids and other pain-treatment options." These individuals "purported to act independently," thereby

4

"lend[ing] legitimacy to the [d]efendants' false and misleading claims about opioids."

Defendants allegedly falsely claimed "opioids produce positive long-term outcomes in cases of chronic pain[,]" and misrepresented the risks of competing non-opioid pain-relief products, "so that doctors and patients would favor opioids for treatment of chronic pain." The complaint asserted defendants unlawfully targeted susceptible providers and vulnerable populations.

Defendants moved to dismiss the complaint for failure to state a claim. Judge Steven J. Polansky heard oral argument on the motion. Plaintiff's counsel explained causation and damages would be proved by an expert's estimate of the likely percentage of improperly written prescriptions and the resulting cost of opioid addiction treatment, based on statistics from a sample of opioid prescriptions. The expert would then calculate the corresponding increase in health insurance costs.

The judge granted the motion to dismiss, finding the CFA claim could not stand because "[d]efendants had no contact with [p]laintiff, and did not make any misrepresentations or omissions to [him]." Even if the plaintiff's allegations were true, the judge found several "links of causation separate [d]efendants' actions from plaintiff's alleged injury[.]" He enumerated the links as follows:

1) defendants' manufacturing and marketing to prescribers and patients; 2) doctors prescribing the opioids; 3) patients using, abusing, and becoming addicted to the opioids; 4) plaintiff's insurer reimbursing patients for the drugs and addiction-related costs; and 5) plaintiff's insurer increasing premiums due to opioid use.

The judge also concluded plaintiff's theory of recovery was "speculative and attenuated." He found plaintiff could not "establish an ascertainable loss through statistical data" because it was "essentially a fraud on the market theory which has been rejected as a basis to establish an ascertainable loss" by our Supreme Court. See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 392 (2007) (rejecting the use of fraud on the market theory to prove insurers paid increased costs for Vioxx because of the defendant's fraudulent marketing campaign).

The judge concluded it was "highly impracticable" to claim insurance premiums increased due to opioids because

> [t]here are a myriad of reasons, independent of the opioid epidemic, which have an impact on insurance costs. Some costs may be borne by insurers resulting in lower profits, some may be paid by employers[,] and some may be passed on to the purchasers of health insurance. These costs may also be subject to higher co-pays, deductibles or limitations of coverage.

A-1174-19

As to both his CFA and public nuisance claims, plaintiff argued his case was similar to James v. Arms Technology, Inc., 359 N.J. Super. 291 (App. Div. 2003). In James, several cities and counties sued gun manufacturers alleging they "intentionally or negligently created and fueled an illegal gun market, thereby unreasonably interfering with the public welfare, knowing, or having reason to know, that their conduct has a significant effect upon a public right." Id. at 332 (citing Restatement (Second) of Torts § 821B (Am. Law Inst. 1979)). We affirmed the denial of defendant's motion to dismiss noting a "public nuisance may exist[] if the conduct complained of involves a 'significant interference' with the public welfare or 'is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.'" Id. at 330 (quoting Restatement (Second) of Torts at § 821B(2)(a) and (c)).

The judge dismissed plaintiff's public nuisance count. He reasoned such claims should be "brought by a governmental entity or an individual who sustains some special damage over and above that suffered by the general public" and the complaint failed to meet either criterion.

He also dismissed the unjust enrichment claim, finding "[p]laintiff can point to no direct benefit received by any [d]efendant from [p]laintiff. Rather,

any benefit [p]laintiff conferred was directed to his health insurer.  The facts presented are far too remote to permit a cause of action based upon unjust enrichment to proceed."

The judge also concluded the negligence claim was not viable because defendants owed no duty of care to plaintiff.  He stated: "The nature of the risk to consumers of health insurance is too far removed [from defendants' conduct], and any risk too attenuated, to find as a matter of fairness that a duty should extend to such outer limits."

We review "de novo the trial court's determination of the motion to dismiss under Rule 4:6-2(e)."  Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 108 (2019) (citing Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017)).  We "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim . . . ."  Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).  We "accept the truth of [a] plaintiff's allegations and, also, give [the] plaintiff the benefit of all reasonable factual inferences."  Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 110-11 (App. Div. 2006).

Our review "is limited to examining the legal sufficiency of the facts alleged on the face of the complaint[,]" and we do not concern ourselves with a plaintiff's ability to prove the allegations. Printing Mart, 116 N.J. at 746.

Having conducted our review pursuant to these principles, we affirm substantially for the reasons set forth in Judge Polansky's thorough and well-written opinion. We add the following comments.

Plaintiff's reliance on James to support the viability of his CFA claim based on a fraud on the market theory of causation is misplaced. The James plaintiffs asserted negligence, product liability, public nuisance, and unjust enrichments claims; they did not assert a CFA claim. 359 N.J. Super. at 304. Moreover, James is inapposite because plaintiff and the putative class are private as opposed to public entities.

Plaintiff asserts James supports his public nuisance claim and his overall theory of causation, which was based on the hypothetical effects of defendants' conduct on insurance costs and premiums. This argument is likewise unavailing. In In re Lead Paint Litigation, the Supreme Court affirmed dismissal of the plaintiffs' complaint against manufacturers of lead paint for failure to state a claim for public nuisance. 191 N.J. 405, 440 (2007). Writing for the majority, Justice Hoens explained:

> A public entity proceeding in public nuisance vindicates the common right and thus pursues . . . civil actions to abate the nuisance . . . [whereas a] private plaintiff . . . does not necessarily sue to vindicate a public right, but seeks recompense for damages to the extent of the special injury sustained, apart from the interference with the public right.
>
> [Id. at 434.]

A "special injury has a specific and well-defined meaning in public nuisance jurisprudence. It must be an injury different in kind, rather than in degree." Id. at 436. The Court held dismissal of the complaint was proper because it did not establish "the requisite connection between damages and special injury." Id. at 435 n.10.

Plaintiff's complaint did not establish a special injury. The complaint averred "[p]rescription opioids have devastated communities across the country and in the State of New Jersey . . . [and] some estimates state that the opioid crisis is costing governmental entities and private companies as much as $500 billion per year." Accepting this claim as true, it is evident the public nuisance claim could not survive dismissal because plaintiff did not assert a different kind of injury but instead the degree of the injury, namely, the increase in insurance premiums and costs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1174-19