**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2112-23

JOSH VADELL, EDWARD
RIEGEL, ANDY PRONOVOST,
JERRY STRING, EUGENE
MAIER, DAVID MADAMBA,
LONELL JONES, JOSEPH
IACOVONE, CONSTANT
HACKNEY, MICHAEL
GAVIN and JAMES ARMSTRONG,

      Plaintiffs-Appellants,

v.

ATLANTIC CITY, STATE OF
NEW JERSEY, DEPARTMENT OF
COMMUNITY AFFAIRS,

      Defendants-Respondents.

_____

Argued May 22, 2025 — Decided June 2, 2025

Before Judges Mawla, Walcott-Henderson, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2900-18.

Matthew R. Curran argued the cause for appellants (Sciarra, Catrambone, Curran & Gray, LLC, attorneys; Matthew R. Curran, of counsel and on the briefs).

Ronald L. Israel argued the cause for respondents (Chiesa Shahinian & Giantomasi, PC, attorneys; Ronald L. Israel and Melissa F. Wernick, on the brief).

PER CURIAM

Plaintiffs Josh Vadell, Edward Riegel, Andy Pronovost, Jerry String, Eugene Maier, David Madamba, Lonell Jones, Joseph Iacovone, Constant Hackney, Michael Gavin, and James Armstrong are retired members of the Atlantic City Police Department (ACPD). They appeal from a February 15, 2024 order denying a motion to amend their complaint and granting defendants Atlantic City, State of New Jersey, and New Jersey Division of Local Government Services (DLGS) in the Department of Community Affairs (DCA) reconsideration and dismissal of plaintiffs' complaint with prejudice for failure to state a claim. We affirm.

Following plaintiffs' retirement in 2017, they filed complaints, which were later consolidated, alleging the City and DCA denied them accrued deferred compensation. They alleged: breach of contract; prerogative writs; violations of the New Jersey Constitution and the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1; unjust enrichment; and quantum meruit. Riegel,

Armstrong, and Iacovone also asserted claims for compensation they argued was owed following their 2016 promotions.

In 2023, plaintiffs moved to amend their complaint to add claims under the New Jersey Constitution. Defendants cross-moved for reconsideration of an earlier order reinstating the complaint and sought dismissal of the complaint with prejudice. The motion judge issued a detailed written opinion, which we will discuss below.

This case is the fourth part of a quartet of cases involving the enactment of Municipal Stabilization & Recovery Act (MSRA), N.J.S.A. 52:27BBBB-1 to -17. See Atl. City Policemen's Benevolent Ass'n Loc. 24 v. Christie, No. ATL-L-0554-17 (Law Div. May 23, 2017) (Police I); Atl. City Superior Officers' Ass'n v. City of Atl. City, No. A-3117-20 (App. Div. June 30, 2022) (Superior Officers'); and Atl. City Policemen's Benevolent Ass'n Loc. 24 v. City of Atl. City, No. A-2478-23 (App. Div. Apr. 7, 2025) (Police II). Broadly, these cases involved disputes over salary and retroactive pay raises and the effect of the MSRA to compromise those rights. In Police II, we affirmed the trial court's dismissal of the plaintiffs' complaint, which alleged breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; and

A-2112-23

violations of the Wage Payment Law, N.J.S.A. 34:11-4.1 to -4.14 and the Wage Collection Law, N.J.S.A. 34:11-57 to 67.2, for failure to state a claim.

Our Legislature enacted the MSRA to help municipalities in dire financial condition. The law authorizes an appointed director with the discretion to take "any and all actions that . . . may help stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery." N.J.S.A. 52:27BBBB-5(a)(3). On November 9, 2016, prior to plaintiffs' retirements, Atlantic City was declared such a municipality.

The MSRA grants the director broad authority to "unilaterally amend[] or terminat[e] any contracts or agreements . . . to which the municipality is a party, provided that the director determines" their action is "reasonable and directly related to stabilizing the finances or assisting with the fiscal rehabilitation and recovery of the municipality." N.J.S.A. 52:27BBBB-5(a)(3)(f). The statute grants the director the power to unilaterally modify, amend, or terminate any collective negotiations agreements (CNAs), or take similar action vis-à-vis "the terms and conditions of employment during the term of any applicable [CNA]" N.J.S.A. 52:27BBBB-5(a)(3)(g). The Legislature also granted the director

power to unilaterally modify "wages, hours, or any other terms and conditions of employment" of "any expired [CNA]."  N.J.S.A. 52:27BBBB-5(a)(3)(i).

The terms of plaintiffs' employment and compensation were contained in a CNA that had been negotiated between the City and their union, Policemen's Benevolent Association Local No. 24 (PBA).  The most recent CNA was negotiated in 2012 and became effective January 1, 2013, through December 31, 2015.  All of plaintiffs' previous CNAs had provided compensation upon retirement for accrued terminal leave.

Article XIX of plaintiffs' CNA, entitled "Terminal Leave With Pay," stated that "upon retirement[,] the employee shall be entitled to terminal leave up to one and one-half . . . year with full pay."  Terminal leave was based upon accumulated sick leave and could either be paid in a lump sum at "the full rate of pay in effect at the time of employee's retirement" or as a four-year payout. The CNA limited payment of terminal leave for employees hired in 1984, 1985, and 1986 to no greater than sixteen months, fourteen months, and twelve months, respectively.  For all employees hired after January 1, 2013, terminal leave was capped at $15,000.  There was no limitation on terminal leave compensation for employees with a rank of sergeant or lieutenant.

The CNA stipulated if a successor agreement was not in place by the time the CNA expired, the CNA would remain in force. When the CNA expired on December 31, 2015, the PBA and the City did not agree to new terms, and so the CNA remained in force.

The MSRA became effective May 27, 2016. On November 9, 2016, the City's local finance board voted unanimously, pursuant to the MSRA, to vest the powers of the City's governing body with the director of the DLGS. DCA assumed supervisory responsibilities over Atlantic City in December 2016. On March 13, 2017, a designee of the DCA notified law enforcement officers and community members the City and PBA were unable to agree on a new CNA. Therefore, pursuant to the MSRA, the designee announced he would unilaterally modify the terms of the CNA. The modifications would go into effect on March 15, 2017. The designee made multiple changes to the CNA, including eliminating all terminal leave payments.

On March 17, 2017, in Police I, the PBA and the Atlantic City Police Superior Officers' Association (SOA) filed an order to show cause and sought temporary restraints regarding the proposed changes. The trial court denied the request for temporary restraints against some of the DCA's proposals, including terminal leave greater than $15,000, but granted temporary restraints and

6

enjoined the DCA from eliminating terminal leave less than $15,000. The designee modified his statement eliminating all terminal leave to be in accord with the court's ruling effective June 7, 2017.

Plaintiffs retired in 2017, on the following dates: Gavin, February 1; Maier, March 14; Hackney, April 1; Armstrong, April 12; Vadell, May 1; Iacovone, June 1; String, July 1; and Riegel, Pronovost, Madamba, and Jones, November 1. They alleged they were entitled to terminal leave benefits totaling $750,928.

On January 16, 2018, the City, PBA, and SOA settled Police I. The settlement agreement stipulated the City would continue to litigate its right to end all terminal leave and kept the court imposed $15,000 cap for all retirees.

On October 18, 2018, the DCA announced the City had progressed financially to a point where it could afford to make some terminal leave payments to individuals who had retired in the previous years. Those who retired prior to November 9, 2016, would receive their full scheduled terminal leave amount. And those who retired after November 9, 2016, would be limited to a terminal leave payment of $15,000. On October 24, 2019, the City passed Resolution 591, permitting the payments in accordance with the DCA's finding.

Plaintiffs moved to amend their complaint to assert CRA violations under the contract clause of the New Jersey Constitution and direct violation of the New Jersey Constitution. They argued Police I did not control because it was an unpublished decision that was not binding. Moreover, Police I did not analyze the reasonableness of the application of the MSRA to the ACPD and plaintiffs' claims. Police I was not binding by way of collateral estoppel because the parties there were different than this case. Plaintiffs alleged they were entitled to their day in court and to have their claims adjudicated on the merits.

Defendants claimed amending the complaint would be futile because Police I and Superior Officers' involved police unions, in which plaintiffs were members. The constitutional contract claims could not survive in the face of these decisions and express language of the MSRA. Plaintiffs could not assert a direct constitutional claim outside the CRA. Defendants' cross-motion for reconsideration mirrored their arguments in opposition to the motion to amend, asserting: Police I and Superior Officers' were persuasive authority; the broad authority under the MSRA to modify CNAs; and the applicability of res judicata, collateral estoppel, and entire controversy doctrine as grounds to dismiss the complaint.

A-2112-23

The judge concluded the MSRA precluded all the relief sought by plaintiffs. Although plaintiffs were correct that unpublished decisions are not binding, citing Sauter v. Colts Neck Volunteer Fire Company Number 2, 451 N.J. Super. 581, 600 (App. Div. 2017), the judge observed a court is not "prevent[ed] from acknowledging the persuasiveness of a reasoned decision on analogous facts." Police I and Superior Officers' were persuasive because they "addressed the MSRA as it was applied to the City and the City's employees . . . [and] their reasoned logic is persuasive as it directly relates to one City."

Even absent the unpublished cases, the judge concluded "[p]laintiffs' contract issue is resolved by the plain language of the MSRA." The judge conducted his own statutory analysis, and found "the Legislature clearly granted the State broad authority[] and intended for the MSRA to supersede any collective bargaining agreement or CNA." He noted the Legislature "instructed the courts to construe the MSRA liberally in light of the State's interest in addressing the City's severe financial distress." This includes that "[d]efendants can cap the terminal leave as they did here." Furthermore, "[a]ccording to the legislation, fiscal recovery 'shall be addressed and corrected.' N.J.S.A. 52:27BBBB-13. Capping those payments is in line with the goal of the City's fiscal recovery."

9

The judge rejected plaintiffs' argument that he had to conduct a reasonableness analysis of the contract clause claim because the claim would be futile given the MSRA's plain language. He cited N.J.S.A. 52:27BBBB-5(3)(i), which states:

> Notwithstanding the provisions of any other law, rule, regulation, or contract to the contrary, the director shall have the authority to take any steps to stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery, including, but not limited to:
>
> . . . .
>
> (i) with respect to any expired [CNA] to which the municipality in need of stabilization and recovery is a party, unilaterally modifying wages, hours, or any other terms and conditions of employment.

The judge concluded "[t]he intent of the MSRA is clear and unambiguous and it permits . . . [d]efendants to exercise their authority over the ACPD's retirees." Because defendants acted pursuant to the power granted them by the MSRA, there was no reason to consider plaintiffs' claim their actions were unconstitutional. The direct constitutional claim was rejected because it was the same as the CRA claim and arose "from an alleged violation of . . . [p]laintiffs' right to collectively bargain."

The judge granted defendants' motion for reconsideration and dismissed the remaining claims in the complaint. He reasoned, "[a]ll the allegations find their genesis in the capped payment of terminal leave. All causes of action arise from . . . [d]efendant's act of capping [p]laintiffs' terminal leave pursuant to the MSRA in an effort to stabilize the City's finances." As a result, "[t]here is no basis under the MSRA that provides . . . [p]laintiffs with any basis for relief for any of their asserted causes of action."

I.

On appeal, plaintiffs argue the motion judge misapplied the Rule 4:6-2(e) standard, and we should remand for discovery and a trial. They assert the judge erred when he dismissed their claims under the New Jersey Constitution for violation of the contracts clause, equal protection, due process, and takings. He should have permitted them to amend the complaint to assert violations of the New Jersey Constitution outside of the CRA.

Plaintiffs allege the CNA unambiguously states they have a vested right in their retirement benefits and its terms still applied even though a new CNA was not negotiated after their CNA expired. Because plaintiffs retired before the PBA and the City reached a settlement, the settlement had no bearing on

11

their compensation, and the court should not have dismissed their contractual claims for unjust enrichment and quantum meruit.

Plaintiffs also assert it was error to dismiss their prerogative writs claim challenging the City's resolution adopting the DCA's recommendation. They claim the MSRA does not permit a municipality to discharge its debts and plaintiffs' terminal leave benefits were such a debt.

II.

We review "de novo the trial court's determination of [a] motion to dismiss under Rule 4:6-2(e)." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019) (citing Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017)). Our task is to "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). We "accept the truth of [a] plaintiff's allegations and, also, give [the] plaintiff the benefit of all reasonable factual inferences." Perkins v. DaimlerChrysler Corp., 383 N.J. Super. 99, 110-11 (App. Div. 2006) (citing Printing Mart, 116 N.J. at 746). Our review "is limited to examining the legal

sufficiency of the facts alleged on the face of the complaint," and we do not concern ourselves with a plaintiff's ability to prove the allegations. Printing Mart, 116 N.J. at 746.

"[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "[R]eversal is required when the [judge's decision] . . . 'is clearly unfair or unjustly distorted by a misconception of law or findings of fact that are contrary to the evidence.'" M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018) (quoting Wadlow v. Wadlow, 200 N.J. Super. 372, 382 (App. Div. 1985)). No deference is required on questions of law and the legal consequences that flow from established facts. Granata v. Broderick, 446 N.J. Super. 449, 467 (App. Div. 2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A court has discretion whether to grant leave to amend a complaint, guided by the fact that leave is "liberally granted and without consideration of the ultimate merits of the amendment." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:9-1 (2024); see also Kernan v. One Washington Park, 154 N.J. 437, 456-57 (1998). Notwithstanding Rule 4:9-1's liberal standard,

judges may deny leave to amend when the granting of relief would be "futile," as when the new claim lacks merit and would ultimately be dismissed for failure to state a claim upon which relief may be granted. Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006). Leave may be denied even where a claim possesses marginal merit if the claim would unduly protract the litigation or cause undue prejudice. Bldg. Materials Corp. of Am. v. Allstate Ins. Co., 424 N.J. Super. 448, 484 (App. Div. 2012); Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994).

## III.

In Police II, we detailed the legislative history and passage of the MSRA and the broad authority the Legislature granted the DCA, its director, and designee to compromise a party's rights under a CNA to stabilize the City's finances. See id. at 4-7. There, among other arguments, the plaintiffs claimed their retroactive pay raises had been earned, and the trial court erred in dismissing their complaint because the MSRA did not authorize the withholding of earned wages and canceling memoranda of agreements (MOAs) to pay those wages. Id. at 13-14. The MOAs were entered two days after the City was designated in need of stabilization and recovery, and the plaintiffs claimed their

cancelation interfered with a vested right. Id. at 7, 19. The Police II plaintiffs also argued the DCA had to show its decision was reasonable. Id. at 14.

We analyzed the statute, specifically N.J.S.A. 52:27BBBB-5(a)(3) and N.J.S.A. BBBB-13, to understand the Legislature's intent. The former statutory provision empowers the director with "the authority to take any steps to stabilize the finances, restructure the debts, or assist in the financial rehabilitation and recovery of the municipality in need of stabilization and recovery." N.J.S.A. 52:27BBBB-5(a)(3) (emphasis added). The latter statutory provision further elucidates the breadth of the director's powers by explaining they have unilateral authority to amend or terminate contracts with the City, any CNA or term under a CNA, including expired CNAs. N.J.S.A. 52:27BBBB-5(a)(3)(f), (g), (i). We, therefore, reasoned as follows:

> The MSRA's ordinary and common-sense language reflects the Legislature's intent to remedy the City's severe fiscal crisis. It is undisputed that the MOAs were contracts with the City. As such, the [d]esignee was authorized to amend or terminate the MOAs under the MSRA. Moreover, because plaintiffs' CNAs expired, the [d]esignee could unilaterally terminate the MOAs and modify plaintiffs' terms and conditions of employment, including salary.
>
> [Police II, slip op. at 17-18.]

We see no reason to depart from our prior logic to reach a different conclusion in this case. At the outset, we are unconvinced the terminal leave was a vested right because plaintiffs all retired after November 9, 2016, when the City became subject to MSRA. Therefore, while the right to terminal leave was agreed to and in some respects enshrined in the CNA, plaintiffs had yet to do the thing necessary to receive the terminal leave pay; retire.

Even if the terminal leave could be considered a right vested prior to the City coming under the ambit of the MSRA, we are unconvinced the MSRA could not override plaintiffs' rights to receive the benefit. N.J.S.A. 52:27BBBB-5(a)(3) permits the director to take "any steps" to restore financial stability. Additionally, N.J.S.A. 52:27BBBB-5(a)(3)(f), (g), and (i) permit the director to modify or terminate any contract in existence, including expired contracts, and does not limit the director's authority to contracts entered after MSRA's enactment. Therefore, the trial judge did not err or misapply the Rule 4:6-2(e) standard when he dismissed the claims plaintiffs had already pled and denied their motion to amend, because the broad powers of the MSRA extinguished plaintiffs' claims and an amended complaint would likewise be futile.

Regardless of whether the constitutional claims were pled under the CRA, in Superior Officers', we cited the basic principle that "[t]he prohibition against

16

impairment of contracts under the federal and state constitutions is not absolute. It 'must be accommodated to the inherent police power of the states to safeguard the vital interests of their residents.'" In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, Stranded Costs & Restructuring Filings, 330 N.J. Super. 65, 93 (App. Div. 2000) (quoting In re Recycling & Salvage Corp., 246 N.J. Super. 79, 100 (App. Div. 1991)). The Legislature clearly expressed its intent and the MSRA's purpose in the following statutory provision:

> The Legislature finds and declares that:
>
> a. The short and long-term fiscal stability of local government units is essential to the interests of the citizens of this State to assure the efficient and effective provision of necessary governmental services vital to public health, safety, and welfare, including the fiscal health of our State's municipalities.
>
> b. In certain extreme cases, local governments that experience severe fiscal distress become incapable of addressing the circumstances that led to that extraordinary distress or of developing a comprehensive plan for financial rehabilitation and recovery.
>
> c. It is necessary and appropriate for the State to take action to assist local governments experiencing severe budget imbalances and other conditions of severe fiscal distress or emergency by requiring prudent fiscal management and operational efficiencies in the provision of public services.

d. As the State entity primarily responsible for the financial integrity and stability of all local government units, the Local Finance Board should be authorized, under certain limited circumstances, to develop a comprehensive rehabilitation plan for local governments that are experiencing severe fiscal distress, and to act on behalf of local government units to remedy the distress.

[N.J.S.A. 52:27BBBB-2(a) to (d).]

As the trial judge aptly found, plaintiffs' constitutional claims were grounded in the "capped payment of terminal leave;" a claim based on the notion that defendants had unlawfully taken or otherwise impaired plaintiffs' rights under the CNA. However, like the contract-based claims, the constitutional claims could not survive because the MSRA is clearly an exercise of the State's inherent police power to safeguard what are perhaps the most vital interests of the City's residents; the City's ability to fiscally operate and provide basic services.

Even if we were somehow convinced the constitutional claims were separate from and greater than simply a violation of the terminal leave provision of the CNA, we would not need to reach them. "[C]ourts should not reach constitutional questions unless necessary to the disposition of the litigation." O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240(1993) (citations omitted). Our review of the record convinces us the overarching legal

framework necessary to resolve the claims plaintiffs pled and intended to plead is the MSRA.

Lastly, the dismissal of the prerogative writs claim was proper. It is readily understood that a municipal governing body has broad discretion to enact a resolution, and courts will only intervene where "the municipal action is arbitrary, capricious[,] or unreasonable." Charlie Brown of Chatham, Inc. v. Bd. of Adjust. for Chatham Twp., 202 N.J. Super. 312, 321 (App. Div. 1985). The City resolution capping the terminal leave payments at $15,000 was not arbitrary, capricious, or unreasonable because the MSRA expressly permits the DLGS to compromise a municipality's financial obligations. Therefore, the challenge to the resolution on prerogative writs grounds was not viable because the City's action was based on fiscal decisions made by the director to remedy the City's financial distress pursuant to the MSRA, and hardly arbitrary, capricious, or unreasonable.

In sum, we affirm for the reasons expressed in the trial judge's thorough and well-written opinion, and for the reasons expressed in this opinion. To the extent we have not addressed an argument raised on the appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-2112-23