**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3837
_____

ANA LIDIA ALPIZAR-FALLAS,
Individually and on behalf of all others similarly situated,

Appellant

v.

FRANK E. FAVERO; BRIAN BARBOSA; PROGRESSIVE
GARDEN STATE INSURANCE COMPANY; JOHN DOE
1-5; JOHN DOE INCORPORATED 1-5, (fictitious
designations)

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 3-17-cv-02768)
District Judge: Honorable Michael A. Shipp

Argued September 11, 2018

Before: JORDAN, VANASKIE and RENDELL,
<u>Circuit Judges</u>

(Opinion Filed:  November 15, 2018)

Charles X. Gormally, Esquire  ARGUED
Thomas Kamvosoulis, Esquire
Brach Eichler
101 Eisenhower Parkway, 2nd Floor
Roseland, NJ    07068

                    Counsel for Appellant


Francis J. Leddy, III, Esquire
McGivney & Kluger
23 Vreeland Road
Suite 220
Florham Park, NJ   07932

Kymberly Kochis, Esquire  ARGUED
Francis X. Nolan, IV, Esquire
Eversheds Sutherland
1114 Avenue of the Americas
The Grace Building, 40th Floor
New York, NY   10036

                    Counsel for Appellee

O P I N I O N

**RENDELL**, Circuit Judge:

Ana Lidia Alpizar-Fallas brought a class action claim against Progressive Garden State Insurance Company ("Progressive") and one of its agents, Bryan Barbosa, alleging that Progressive and Barbosa's deceptive business practices violated New Jersey's Consumer Fraud Act ("CFA"). The District Court dismissed her claim, characterizing it as a denial of insurance benefits, which the New Jersey appellate courts have ruled is not covered by the CFA. Because we view Alpizar-Fallas's complaint as alleging deception that would be covered by the CFA rather than a denial of benefits, we disagree and will vacate and remand.

I.

A.[1]

This case began with an all too common occurrence: a car accident. Frank Favero's car struck that of Alpizar-Fallas, causing Alpizar-Fallas "serious injuries and damages," including substantial pain and suffering, expenses for medical bills, and diminished earning capacity. A. 4-5. At the time of

---

[1] On appeal from the grant of a motion to dismiss, the factual allegations set forth below are derived from Alpizar-Fallas's complaint and are accepted as true. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 642 n.1 (2008).

the accident, both Alpizar-Fallas and Favero were insured by Progressive.

The morning following the accident, Barbosa, a Progressive claims adjuster, contacted Alpizar-Fallas by phone. He represented that he was a Progressive agent and asked if he could come to her home to inspect the damage to her car and have her sign "paperwork" that would "expedite the processing of the property damage claim." A. 2, 6. Barbosa arrived about an hour later with multiple documents for Alpizar-Fallas to sign. She alleged in her complaint that he told her that her accident "had a questionable issue of liability" and that her signature was "necessary" for Progressive to advance the payment of her claim. A. 6. Barbosa presented a document to Alpizar-Fallas that he "required" her to sign and that he "expressly represented would expedite the property damage claim of the accident." *Id.* In reliance on Barbosa's statements, Alpizar-Fallas signed the document.

Contrary to Barbosa's assertions, the document was, in fact, "a broadly written comprehensive general release of any and all claims," including claims against Favero for "any and all known and unknown personal injuries resulting from the motor vehicle accident." A. 7. Alpizar-Fallas was unaware of the legal significance of the release language in the document, and Barbosa failed to alert her to it. Barbosa also failed to advise Alpizar-Fallas to seek legal counsel and did not communicate with her in Spanish, her native language. Furthermore, he required that Alpizar-Fallas "sign the release in his presence at her home." *Id.*

4

B.

Alpizar-Fallas commenced this action in New Jersey state court against Favero,[2] seeking damages for the personal injuries she sustained in the accident. She amended her complaint to include a class action claim against Progressive and Barbosa under the New Jersey Unfair Claims Settlement Practices Regulations ("UCSPR"), N.J. Admin. Code §§ 11:2-17.1 to -17.15, and the CFA, N.J. Stat. Ann. §§ 56:8-1 to -210. Alpizar-Fallas again amended her complaint to name the proper insurance carrier, and the defendants removed the case to the U.S. District Court for the District of New Jersey.

Once in federal court, Progressive and Barbosa (collectively, "Appellees") moved to dismiss Alpizar-Fallas's class action claim for failure to state a claim. They lodged several arguments: the UCSPR does not provide a private right of action, the UCSPR precludes application of the CFA, the CFA does not apply to schemes to defraud policyholders of their benefits and personal injury claims, and Alpizar-Fallas failed to properly plead a claim for relief under the CFA. Specifically, with respect to their final argument, Appellees contended that Alpizar-Fallas did not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), did not plead an "ascertainable loss" as required by the CFA, and did not allege a violation of the CFA because Appellees were acting pursuant to Favero's insurance policy, not her policy, when Barbosa visited Alpizar-Fallas's residence.

[2] She also named "John Doe 1-5" and "John Doe Incorporated 1-5" as defendants, alleging that they may have caused the accident. A. 2, 4.

5

C.

The District Court granted Appellees' motion without prejudice in an order and letter opinion. The District Court first dismissed Alpizar-Fallas's class action claim to the extent it alleged a violation of the UCSPR because that set of regulations does not provide a private right of action. Next, the District Court dismissed Alpizar-Fallas's CFA claim, construing the CFA to only apply to the "sale or marketing" of insurance policies. A. 40. Although the District Court referred to our opinion in *Weiss v. First Unum Life Insurance Co.*, 482 F.3d 254, 266 (3d Cir. 2007), in which we held that the CFA covers the *performance* of insurance policies, the District Court opted to follow a more recent decision of the New Jersey Superior Court Appellate Division, *Myska v. N.J. Manufacturers Insurance Co.*, 114 A.3d 761 (N.J. Super. Ct. App. Div. 2015). Quoting *Myska*, the District Court noted that the CFA does not apply to "an insurance company's *refusal to pay benefits*." A. 40 (citation and internal quotation marks omitted) (emphasis added). The District Court viewed the facts of Alpizar-Fallas's case as similar to those in *Myska*, where the plaintiff attacked an insurance company's "*systematic* practice of denying, obfuscating coverage of, or otherwise avoiding claims by New Jersey consumers." *Id.* (quoting *Myska*, 114 A.3d at 767) (emphasis in original) (internal quotation marks omitted). The District Court also noted that the *Myska* court "distinguished *Weiss* as involving the 'fraudulent discontinuation of previously authorized benefits.'" A. 41 (quoting *Myska*, 114 A.3d at 777).

Thereafter, the District Court, upon Alpizar-Fallas's motion and the agreement of the other parties, entered a consent order, amending its dismissal to one with prejudice

6

and remanding the remaining personal injury claims to New Jersey state court. Alpizar-Fallas filed this timely appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332(d) and 1453. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's dismissal for failure to state a claim under Rule 12(b)(6) *de novo*, *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017), and "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). We accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 91 (3d Cir. 2010).

## III.

On appeal, Alpizar-Fallas contends that the District Court erred in dismissing her CFA claim because the allegations of her complaint set forth the type of harm that the CFA is designed to remedy.[3] In opposition, Appellees argue that her CFA claim is precluded by the UCSPR, that her allegations are not within the scope of the CFA, and that her pleading fails to conform to the requirements of the CFA and Federal Rule of Civil Procedure 9(b).

---

[3] She does not appeal the District Court's dismissal of her UCSPA claim.

A.

In determining the extent to which the CFA applies to the performance of insurance contracts, we must predict how the New Jersey Supreme Court would rule if faced with the issue. *Covington v. Continental Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004) (citation omitted). In doing so, we must consider:

> decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered *dicta*, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.

*Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216-17 (3d Cir. 2010) (citation and internal quotation marks omitted). Intermediate state court decisions are relevant and should not be disregarded unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." *Covington*, 381 F.3d at 218 (quotation marks and citation omitted).

1.

In relevant part, the CFA prohibits:

> [t]he act, use or employment by any person of *any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation*, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale* or advertisement of any merchandise or real estate, *or with the subsequent performance of such person as aforesaid*, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2 (emphasis added). This provision may be enforced by individual consumers, who may be compensated for violations with treble damages. *Id.* §§ 56:8-2.11 to -2.12, 56:8-19. Additionally, the CFA's "rights, remedies and prohibitions" are explicitly cumulative to those created by other sources of law. *Id.* § 56:8-2.13.

The CFA is intended to "combat the increasingly widespread practice of defrauding the consumer." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 460 (N.J. 1994) (quoting S. Comm., Statement to the Senate Bill No. 199 (N.J. 1960)) (internal quotation marks omitted). In enacting the CFA, the New Jersey Legislature intended to "give New Jersey one of the strongest consumer protection laws in the

9

nation." *Id.* (citing Governor's Press Release for Assembly Bill No. 2402, at 1 (Apr. 19, 1971)). Therefore, its history "is one of constant expansion of consumer protection," *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997), and it "should be construed liberally in favor of consumers," *Cox*, 647 A.2d at 461.

2.

The New Jersey Supreme Court addressed whether the sale of insurance is covered by the CFA in *Lemelledo v. Beneficial Management Corp.*, 696 A.2d 546 (N.J. 1997). There, the court was faced with the application of the CFA to an insurance-related lending practice, namely, "loan packing," or "increasing the principal amount of a loan by combining the loan with loan-related services, such as credit insurance, that the borrower does not want." *Id.* at 548. The plaintiff alleged that the defendant, a financial services company, led her to believe that she would not receive her loan unless she also purchased other loan-related services with it. She maintained this claim despite the fact that the defendant provided a disclosure statement informing her that she was not required to purchase the services. *Id.* at 549. Although the CFA does not explicitly name insurance policies as covered "merchandise," the court held that "the statute's language is ample enough to encompass the *sale* of insurance policies as goods and services that are marketed to consumers." *Id.* at 551 (emphasis added). In so holding, the court noted that "several lower courts have held that the payment of insurance *benefits* is not subject to the CFA," but since the issue was not squarely presented, declined to rule on it. *Id.* (citing *Nikiper v. Motor Club of Am. Cos.*, 557 A.2d 332, 336 (N.J. Super Ct. App. Div. 1989), *certif. denied*, 564 A.2d 863 (N.J. 1989); *Pierzga v. Ohio Cas. Grp. of Ins. Cos.*,

10

504 A.2d 1200, 1205 (N.J. Super. Ct. App. Div. 1986), *certif. denied*, 517 A.2d 402 (N.J. 1986)); *id.* at 551 n.3.

In extending the CFA to the sale of insurance, the *Lemelledo* court endorsed a broad application of the statute: "The language of the CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." *Id.* at 551. Even though insurance was not named in the statute, the court reasoned that the CFA "could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud in its myriad, nefarious manifestations." *Id.*

The court also addressed whether application of the CFA to the sale of insurance "would run counter to our traditional reluctance to impose potentially inconsistent administrative obligations on regulated parties." *Id.* at 552. In holding that application of the CFA was not precluded by four other insurance-related statutes—the Consumer Loan Act, the New Jersey Insurance Trade Practices Act ("ITPA"), the Insurance Producer Licensing Act, and the Credit Life and Health Insurance Act—the court noted "the strong and sweeping legislative remedial purpose apparent in the CFA" and found that the CFA's cumulative remedies and private right of action provisions "reflect an apparent legislative intent to enlarge fraud-fighting authority and to delegate that authority among various governmental and nongovernmental entities . . . ." *Id.* at 553-55. Because all of the reviewed statutes have the same goal, "namely, the prevention of fraud and misrepresentation in the sale of credit and/or insurance," the CFA "simply complements" the others. *Id.* at 555.

11

We were guided by *Lemelledo*'s holding in *Weiss v. First Unum Life Insurance Co.*, where we addressed whether the CFA covered the allegedly fraudulent practice of discontinuing previously authorized benefit payments. 482 F.3d at 256, 265. In responding in the affirmative, we predicted that the New Jersey Supreme Court would hold that the CFA covers "fraud both in the initial sale (where the seller never intends to pay), and fraud in the *subsequent performance* (where the seller at some point elects not to fulfill its obligations)." *Id.* at 266 (emphasis added). In doing so, we highlighted the language of the statute, which explicitly covers acts "in connection with . . . the subsequent performance of such person as aforesaid," and *Lemelledo*'s "sweeping statements regarding the application of the CFA to deter and punish deceptive insurance practices." *Id.* (quotation marks and citation omitted).

3.

Appellees contend that the UCSPR precludes application of the CFA in this case. Specifically, Appellees argue that the ITPA, the statute pursuant to which the UCSPR regulations were promulgated, creates a "direct and unavoidable conflict" with the CFA because the former does not offer a private right of action while the latter does. Br. for Appellees at 14 (quoting *Lemelledo*, 696 A.2d. at 554). As noted above, however, the New Jersey Supreme Court directly addressed any potential conflict between the CFA and the ITPA in *Lemelledo* and held that none exists. 696 A.2d at 555 (noting that the ITPA's remedies are explicitly cumulative).

12

Moreover, the fact that a private right of action exists under the CFA but not the ITPA does not create a "direct and unavoidable conflict" that would preclude application of the CFA here. The *Lemelledo* court established a presumption that the CFA applies in the face of potential conflicts. *Id.* at 553-54. This presumption can only be rebutted by "a direct and unavoidable conflict" between the CFA and other regulatory schemes. *Id.* at 554. In determining whether such a conflict exists, a court should consider whether the other regulation or regulations "deal specifically, concretely, and pervasively with the particular activity, implying a legislative intent not to subject parties to multiple regulations that, as applied, will work at cross-purposes." *Id.* Furthermore, "the conflict must be patent and sharp, and must not simply constitute a mere possibility of incompatibility." *Id.* For example, in *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566 (N.J. 1978), the New Jersey Supreme Court rejected application of the CFA to the rate-setting of a privately owned public utility, reasoning that "application of the CFA . . . could . . . lead to the anomalous result of a tariff approved by the [Public Utilities Commission] but rejected and penalized by the Division of Consumer Affairs or the courts applying the CFA." *Lemelledo*, 482 F.3d at 553.

The allowance of a private right of action in conjunction with regulatory action does not amount to "a direct and unavoidable conflict" reproved by *Lemelledo*. First, the New Jersey Supreme Court has explicitly authorized multiple remedies of these types, stating that the allowance of a cause of action for damages in one statute does not "inhibit[] enforcement of . . . other statutes, because a court can assess damages in addition to any other penalty to which a defendant is subject." *Id.* at 555. Second, regulation by the

13

New Jersey Department of Banking and Insurance under the UCSPR would not be inconsistent with Alpizar-Fallas's CFA claim to the same extent as the potential conflict with utility rate-setting in *Daaleman*, since, in this case, both would potentially punish unlawful behavior and neither would affirmatively approve the same conduct. Finally, the remedies of both the CFA and the ITPA are explicitly cumulative, which "reflect[s] an apparent legislative intent to enlarge fraud-fighting authority and to delegate that authority among various governmental and nongovernmental entities, each exercising different forms of remedial power." *Id.* at 553. For these reasons, we reject Appellees' argument that application of the CFA to this case is precluded by the UCSPR.

4.

Appellees rely, as did the District Court, on *Myska* for the proposition that the denial of benefits is outside the scope of the CFA. *See Myska v. N.J. Mfrs. Ins. Co.*, 114 A.3d 761, 777 (N.J. Super. Ct. App. Div. 2015). In *Myska*, the defendant insurance company had denied the plaintiffs' claims for payment for diminution of value of their cars after they had been damaged in accidents. *Id.* at 765-67. In finding the plaintiffs' allegations outside the scope of the CFA, the court reasoned that the CFA "was not intended as a vehicle to recover damages for an insurance company's refusal to pay benefits." *Id.* at 777. Because "the essence of plaintiffs' causes of action involved whether they filed and supported a claim for a specified amount of benefits under their respective policies," their claims were not cognizable under the CFA. *Id.*

14

That case is inapposite. Here, Alpizar-Fallas alleges neither that she filed an insurance claim nor that she was denied any benefits. Instead, the allegations in her complaint fall squarely within the language of the CFA and our holding in *Weiss*. Specifically, she alleges the following:

- Alpizar-Fallas "relied on the express false representations of the agent and/or employee of her insurance company's claims adjuster—Defendant Barbosa—that the documents he prepared and delivered to her needed to be signed merely to facilitate her receipt of the money for the damages to her motor vehicle;"

- Barbosa "falsely represented the nature of the documents that [she] signed;"

- "The document, prepared by the [Appellees,] was in fact a broadly written comprehensive general release of any and all claims;"

- "Plaintiff reasonably relied on the materially false representations of [Appellees] when she signed the documents since Defendant Barbosa, [sic] represented to [Alpizar-Fallas] that he was an agent of [her] own insurance company, Progressive;"

- "[Appellees] and others at the insurance company have engaged in this same pattern of unlawful conduct with respect to other similarly situated individuals;" and

15

- "As a result of this deceptive and unconscionable practice, present and former insurance policy holders of Defendant, Progressive[,] have continued to be stripped of their rights to pursue claims against other policy holders of Progressive Garden State Insurance Company due to the [Appellees'] false and misleading representations . . . ." A. 7-8.

These facts, taken together, amount to an allegation of fraud in connection with the subsequent performance of a consumer contract, a situation explicitly covered by the language of the CFA, sanctioned by this Court in *Weiss*, and supported by the New Jersey Supreme Court's broad statements regarding the application of the CFA.[4]

---

[4] Appellees also contend that because Barbosa was acting pursuant to *Favero's* policy when he met with Alpizar-Fallas in her home, Alpizar-Fallas is not a consumer protected by the CFA for purposes of this interaction. Because Appellees failed to argue this before the District Court, this argument is waived. *Gass v. Virgin Islands Tel. Corp.*, 311 F.3d 237, 246 (3d Cir. 2002). Even if not waived, Appellees' contentions are not supported by Alpizar-Fallas's complaint, which is the only document we can consider on this motion to dismiss. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Instead, Alpizar-Fallas alleged that "Barbosa[] represented to *Plaintiff* . . . that he was an agent of *Plaintiff's* insurance company Progressive, and that he was in the neighborhood and that *Plaintiff's* insurance company wanted him to visit *the Plaintiff* . . . ," and that she "relied on the materially false representations of [Barbosa] when she signed the documents since [he] represented to the Plaintiff that he was an agent of

In sum, we predict that the New Jersey Supreme Court would apply the CFA to Alpizar-Fallas's claim, where an insurance company is alleged to have fraudulently performed a contract with a consumer. Accordingly, we conclude that Alpizar-Fallas stated a viable claim under the CFA.

B.

Finally, Appellees argue that Alpizar-Fallas's complaint does not conform to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) and does not allege an "ascertainable loss" as required by the CFA. We reject both of these arguments.

1.

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This has been interpreted to require that plaintiffs "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged'" and "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (citation omitted). In her complaint, Alpizar-Fallas alleged the precise events

---

*the Plaintiff's* own insurance company, Progressive." A. 6-7 (emphasis added). Therefore, Alpizar-Fallas has alleged fraud in conjunction with the performance of her own insurance policy.

17

surrounding her CFA claim. She pled the date, time, and place of Appellees' conduct and provided a detailed description of that conduct. Therefore, her allegations meet Rule 9(b)'s standard.

2.

The CFA requires a plaintiff to allege "ascertainable loss." *See* N.J. Stat. Ann. § 56:8-19; *D'Agostino v. Maldonado*, 78 A.3d 527, 536-37 (N.J. 2013). The New Jersey Supreme Court has defined "ascertainable loss" as "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measureable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (quoting *Thiedemann v. Mercedes-Benz U.S.A., LLC*, 872 A.2d 783, 792-93 (N.J. 2005)) (internal quotation marks omitted). Furthermore, that court has held that such a loss "need not yet have been experienced as an out-of-pocket loss to the plaintiff." *Thiedemann*, 872 A.2d at 793. The New Jersey Superior Court Appellate Division has stated that a plaintiff is not required to allege the nature of the loss or present evidence of it at the motion to dismiss stage. *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1003-04 (N.J. Super. Ct. App. Div. 2006).

In Alpizar-Fallas's complaint, she alleged that, because of Appellees' conduct, she and other class members were "*stripped of their rights to pursue claims* against other policy holders of Progressive . . . ." A. 8 (emphasis added). In Alpizar-Fallas's case, this means that she is unable to recover certain losses from her accident with Favero, which are detailed in the beginning of her complaint. Specifically, she has required and will continue to require medical care;

18

has suffered "impairment of her earning capacity and power;" has suffered and will continue to suffer "great pain, suffering agony, mental anguish, embarrassment and humiliation;" has been hindered and will be hindered "from attending to her daily duties, functions and occupation;" and will "continue to incur other financial losses or expenses." A. 4-5. These allegations are sufficient to demonstrate a "loss in value that is quantifiable or measureable ."[5]

## IV.

For the foregoing reasons, we will vacate the District Court's dismissal and remand for further proceedings consistent with this opinion.

---

[5] Appellees also argue that there were "no damages at all" because Alpizar-Fallas "was paid for her claim against Favero." Br. of Appellees at 19. Because this was not alleged in the complaint, we will not consider it at the motion to dismiss stage. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).