**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3202

_____

BCR CARPENTRY LLC; KIMBERLY ENRIGHT; WILLIAM DEMOLA; MICHAEL
BENT; AMY ARROYO, on behalf of themselves and all others similarly situated,
Appellants

v.

FCA US, LLC

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:21-cv-19364)
District Judge: Honorable Georgette Castner

_____

Argued July 8, 2025

Before: KRAUSE, MATEY and PHIPPS, *Circuit Judges*

(Filed: October 3, 2025)

Samantha I. Braver
Handley Farah & Anderson
33 Irving Place
New York, NY 10003

Sara D. Brooks
Spencer S. Hughes **[ARGUED]**
David Stein
Gibbs Mura
1111 Broadway
Suite 2100
Oakland, CA 94607

Joseph J. DePalma
Lite DePalma Greenberg & Afanador
570 Broad Street
Suite 1201
Newark, NJ 07102
        *Counsel for Appellants*

Stephen A. D'Aunoy **[ARGUED]**
Klein Thomas Lee & Fresard
100 N Broadway
Suite 1600
St. Louis, MO 63102
        *Counsel for Appellee*

---

OPINION[*]

---

MATEY, *Circuit Judge*.

The Automobile Information Disclosure Act of 1958 (AIDA), 15 U.S.C. §§ 1231–1233, states that "prior to the delivery of any new automobile to any dealer," a manufacturer is required to "securely affix" to the vehicle a label that includes "the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer." 15 U.S.C. § 1232(f)(3). This is known as a "destination charge." App. 132. FCA US, LLC (FCA), a vehicle manufacturer, "presents the destination charge to car buyers and lessees on the window stickers" in accordance with AIDA. App. 132.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

BCR Carpentry LLC (BCR) and other individually named plaintiffs filed a putative class action against FCA for violations of the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-1 to -229, money had and received, and unjust enrichment. They allege "FCA misleads customers about what is included in the" destination charge by injecting profit. Opening Br. 1. The District Court granted FCA's motion to dismiss with prejudice.[1]

We see no error. "To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). "There are three general types of 'unlawful practices': 'affirmative acts, knowing omissions, and regulation violations.'" *Coba v. Ford Motor Co.*, 932 F.3d 114, 124 (3d Cir. 2019) (quoting *Frederico*, 507 F.3d at 202). Plaintiffs claim FCA engaged in unlawful practices through affirmative acts of deception and unconscionable practices, as well as omissions. Liability for an affirmative act arises "even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive. For liability to attach to an

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(d)(2), and we have jurisdiction pursuant to 28 U.S.C. § 1291. "[O]ur review of the grant of a motion to dismiss is plenary." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (alteration in original) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "To survive a motion to dismiss, a complaint must . . . plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Anderson v. TikTok, Inc.*, 116 F.4th 180, 182 n.5 (3d Cir. 2024) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this "stage, 'we must accept [plaintiffs'] allegations as true and draw all inferences in [their] favor.'" *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 641 n.1 (3d Cir. 2024) (quoting *Dennis v. City of Philadelphia*, 19 F.4th 279, 284 (3d Cir. 2021)).

omission or failure to disclose, however, the plaintiff must show that the defendant acted with knowledge." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997) (citations omitted).

But Plaintiffs cannot show that FCA affirmatively acted unlawfully. The NJCFA is only violated "by an affirmative misrepresentation *so misleading* as to a fact material to the consumer's decision that the consumer is effectively deprived of the ability to make an intelligent decision." *Suarez v. E. Int'l Coll.*, 50 A.3d 75, 88 (N.J. Super. Ct. App. Div. 2012) (emphasis added). And no reasonable consumer would be surprised to learn that a "charge" includes profit.[2] While Plaintiffs allege FCA acted deceptively because "[c]onsumers are told explicitly that destination charges do not include profit," none of those statements were made by FCA.[3] App. 159. Nor have Plaintiffs plausibly alleged that FCA engaged in unconscionable practices. Including profit in a charge is not indicative of "a lack of good faith, fair dealing, and honesty." *D'Agostino v. Maldonado*, 78 A.3d 527, 540 (N.J. 2012) (quoting *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d

---

[2] The dissent sees it differently, arguing Plaintiffs' claims should survive because they alleged a destination charge had the "capacity to mislead." Dissenting Op. at 2 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). But the term "is not inherently misleading, only inherently ambiguous," *Williams v. Chase Home Fin. LLC*, No. A-3614-12T3, 2014 WL 2050517, at *2 (N.J. Super. Ct. App. Div. May 20, 2014) (per curiam), which is insufficient to state a claim under the NJCFA. Because Plaintiffs cannot clear even this "unusually low bar," Dissenting Op. at 3, their claims fail.

[3] The closest Plaintiffs come is a 2013 statement from a representative of Chrysler, FCA's predecessor, explaining that the destination charge is set "for each nameplate based on our costs to deliver a new vehicle from the assembly plant to the dealership. Our costs include shipments by rail and truck." App. 161. But the inclusion of costs does not speak to the absence of profit from a charge.

4

161, 168 (3d Cir. 1998)). And we are hardly alone in reaching that conclusion.[4] So the District Court did not err in dismissing Plaintiffs' NJCFA claims based on affirmative acts.

Plaintiffs' NJCFA claim based on omissions fares no better. To conclude a "defendant knowingly concealed a material fact with the intent that plaintiff rely on the concealment," he must have had a "duty to disclose." *Judge v. Blackfin Yacht Corp.*, 815 A.2d 537, 543 (N.J. Super. Ct. App. Div. 2003). Such a duty does not arise "unless a fiduciary relationship exists between [the parties], unless the transaction itself is fiduciary in nature, or unless one party 'expressly reposes a trust and confidence in the other.'" *N.J. Econ. Dev. Auth. v. Pavonia Rest., Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div. 1998) (quoting *Berman v. Gurwicz*, 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981)). Those circumstances are not present here, where the parties never formed a direct relationship because FCA only "charges its dealerships . . . for vehicle delivery," App. 132, rendering the destination charge a "pass-through charge[]" a consumer pays to the dealership and not FCA, App. 133. Nor is "such disclosure . . . necessary to make a previous statement true," because, as discussed above, a reasonable consumer would not

---

[4] *See Beeney v. FCA US LLC*, No. 22-00518, 2023 WL 6962116, at \*5 (D. Del. Oct. 20, 2023) ("[N]othing about this term conveys to a consumer that the destination charge is the actual *cost* of transporting a vehicle to its destination."), *aff'd*, No. 24-2519, 2025 WL 2556242 (3d Cir. Sept. 5, 2025); *Gunn v. FCA US, LLC*, No. 22-cv-02229, 2023 WL 5418736, at \*5 (N.D. Cal. Aug. 22, 2023) ("Overall, a reasonable consumer would not be misled by FCA's fully disclosed destination charge."); *Romoff v. Gen. Motors LLC*, 574 F. Supp. 3d 782, 788 (S.D. Cal. 2021) ("The term 'Destination Charge' does not reasonably imply an absence of profit."), *aff'd*, No. 22-55170, 2023 WL 1097258 (9th Cir. Jan. 30, 2023).

assume that a charge omitted profit. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). Accordingly, the District Court did not err in dismissing Plaintiffs' NJCFA claim based on omissions.

Plaintiffs' common law claims are similarly flawed. The elements of a claim for money had and received parallel those for unjust enrichment, *see Hartford Accident & Indem. Co. v. Benevento*, 44 A.2d 97, 100 (N.J. 1945), which "requires a showing 'that defendant received a benefit and that retention of that benefit without payment would be unjust,'" *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 319 (3d Cir. 2019) (emphasis omitted) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Under this "quasi-contract doctrine," the plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Thieme v. Aucoin-Thieme*, 151 A.3d 545, 557 (N.J. 2016) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). But any such expectation is absent from the complaint. Nor can Plaintiffs demonstrate "some direct relationship between the parties or a mistake on the part of the person conferring the benefit," *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 335 (N.J. Super. Ct. App. Div. 1966), for the reasons discussed above. So the District Court properly dismissed Plaintiffs' common law claims.

\* \* \*

For these reasons, we will affirm the District Court's order.

KRAUSE, *Circuit Judge*, dissenting.

When we are tasked with reviewing claims brought under New Jersey law, we are not at liberty to ignore the directions of the New Jersey Supreme Court. Rather, we "must predict how the New Jersey Supreme Court would rule if faced with the issue." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018). Here, the New Jersey Supreme Court has told us that the New Jersey Consumer Fraud Act (NJCFA), N.J. Stat. Ann. §§ 56:8-1 to -229, confers liability when conduct has merely the *capacity* to mislead, and that the statute should be "'construed liberally in favor of consumers'" and consistent with the legislature's "inten[tion] to 'give New Jersey one of the strongest consumer protection laws in the nation,'" *Alpizar-Fallas*, 908 F.3d at 915 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 460-61 (N.J. 1994)).

The majority does not heed this admonition. While we should be accepting the allegations in Appellants' Second Amended Complaint as true and assessing whether they state a claim under New Jersey's expansive consumer fraud law, the majority instead "indulg[es] its skepticism" of the evidence laid out in the Complaint and skews the inferences accordingly. *Doe v. Univ. of Scis.*, 961 F.3d 203, 210 n.3 (3d Cir. 2020). Because Appellants have plausibly alleged that FCA engaged in conduct that has the capacity to mislead consumers under the NJCFA, I respectfully dissent.

## I. The NJCFA Requires Only the Capacity to Mislead.

The majority proceeds from a fundamentally flawed premise because it ignores the breadth of the NJCFA. New Jersey courts have repeatedly held that when assessing whether "affirmative acts" like fraud, deception, or misrepresentation give rise to

1

liability, "[t]he capacity to mislead is the prime ingredient" in a court's analysis. *Cox*,

647 A.2d at 462; *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977).[1] The

NJCFA does not require that the defendant made a "false statement of fact" or had intent

to deceive. *Belmont Condo. Ass'n, Inc. v. Geibel*, 74 A.3d 10, 26-27 (N.J. App. Div.

2013) (quotation omitted). Nor does it require that consumers were "in fact misled or

deceived." *Cox*, 647 A.2d at 462. It also does not require reliance—"[t]hat is[,] . . . proof

that a consumer would not have purchased a product absent the alleged unlawful

practice." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012).[2]

Because "capacity to mislead" is a uniquely low threshold, the NJCFA stands

apart from other states' consumer protection laws and prohibits a wide range of conduct

that would not be prohibited in those jurisdictions. California courts, for instance, have

---

[1] *See also Belmont Condo. Ass'n, Inc. v. Geibel*, 74 A.3d 10, 27 (N.J. Super. Ct. App. Div. 2013) ("The capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." (quoting *Fenwick*, 371 A.2d at 16)); *Hudson Harbour Condo. Ass'n, Inc. v. Oval Tennis, Inc.*, 2015 WL 4544731, at *3 (N.J. Super. Ct. App. Div. July 29, 2015) (noting that it is the mere "capacity to mislead" that is the "prime ingredient of all types of consumer fraud" under the NJCFA (cleaned up)).

[2] *Gennari v. Weichert Co. Realtors* is not to the contrary. 691 A.2d 350 (N.J. 1997). There, the New Jersey Supreme Court recounted the appellate court's description of an actionable statement as "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Id.* at 366 (quoting *Gennari v. Weichert Co. Realtors*, 672 A.2d 1190, 1206 (N.J. Super. Ct. App. Div. 1996)). But it then went on to say explicitly that neither reliance nor intent are required under the NJCFA. *Id.* at 365-66. And as to falsity, the court was distinguishing between statements of actionable fact and inactionable puffery, not between statements that were true versus false, let alone false versus capable of misleading. *Id.* at 366. Thus, not surprisingly, multiple state appellate courts have since adhered to the view that a statement may be misleading even if not a "false statement of fact." *Geibel*, 74 A.3d at 26; *Leon v. Rite Aid Corp.*, 774 A.2d 674, 679 (N.J. Super. Ct. App. Div. 2001); *see also Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J. Super. Ct. App. Div. 2002) ("Even if an advertisement is literally true, it may be actionable . . . .").

observed in this context that "substituting 'likely to mislead'" for "capacity to mislead" raises the bar and results in a "new standard." *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 493 n.5 (Cal. Ct. App. 2003). Under the "likely to mislead" standard, California courts ask whether an "ordinary consumer acting reasonably under the circumstances" would be deceived. *Id.* at 498. The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201-.213, which incorporates the standards under the Federal Trade Commission Act, likewise requires a showing of "probable, not possible, deception" when the standard is "'likely to mislead,' not . . . 'capacity to mislead,'" *Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) (quoting *Southwest Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1435 (9th Cir. 1986)). And as Florida courts have recognized, that standard "imposes a greater burden of proof" than the capacity to mislead standard. *Id.*

In sum, though "the mere capacity to mislead" sets an unusually low bar, *Hudson Harbour Condo. Ass'n, Inc. v. Oval Tennis, Inc.*, 2015 WL 4544731, at *3 (N.J. Super. Ct. App. Div. July 29, 2015) (internal quotation marks omitted), that is the bar set by New Jersey law. And it is intended by New Jersey courts to reach "more than the stereotypic con man" and, instead, "to promote the disclosure of relevant information to enable the consumer to make intelligent decisions." *Geibel*, 74 A.3d at 27 (quoting *Leon v. Rite Aid Corp.*, 774 A.2d 674, 679 (N.J. Super. Ct. App. Div. 2001)).

## II.      Appellants Met their Burden of Pleading Capacity to Mislead.

Applying the "capacity to mislead" standard, Appellants have plausibly pleaded that FCA's practice of including profit in its destination charge violates the NJCFA. This

is because the Complaint alleges a plausible basis to believe that "[r]easonable consumers do not expect a delivery surcharge like FCA's 'destination charge,' to be marked up to include profit." App. 159. These are not mere conclusory allegations—the Complaint includes numerous, concrete allegations showing it is likely, let alone plausible, that a reasonable consumer in the market for a car would believe the manufacturer's destination charge, passed on to him by the dealer, reflects actual cost and excludes profit as a matter of longstanding industry practice.[3]

First, Appellants identify public-facing comments of industry leaders and executives made to popular consumer publications. This includes (1) a Vice President at J.D. Power saying that imposition of the destination charge is "intentionally a profit neutral activity" and automakers "set a rate that is the average across its portfolio to ship vehicles" and "aren't supposed to hide profit in the field," App. 160; (2) a Honda spokesperson saying that the charge "consists of all transportation and processing costs for all finished vehicles covering their movement from plants or ports to dealers," and that the "[c]osts are calculated into a national average which results in equalized freight charges," App. 161-62; and (3) a spokesperson for Chrysler (the predecessor entity of FCA) saying that it "sets the destination charge for each nameplate based on [its] costs to deliver a new vehicle," App. 161.

---

[3] *See New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003) (noting that the NJCFA proscribes practices that "stand outside the norm of reasonable business practice" such that their use "will victimize the average consumer" (quotation omitted)).

4

Second, Appellants point to consistent statements from a variety of trusted consumer resources that shape what the average new car buyer knows or believes. Consumer Reports, for example, says the destination charge "covers the cost to deliver the vehicle from the factory to the dealership," is "set by the automaker and typically the same for all models," and is "a straight pass-along cost." App. 163. Newsweek informs consumers that "[t]he destination charge . . . is the amortized cost of getting a car from the factory to the dealership" that is "average[d] out" by manufacturers. Jake Lingeman, *What Goes into Determining a Car's Destination and Delivery Fee?*, Newsweek (Nov. 15, 2022) (incorporated by reference at App. 134 n.29), https://www.newsweek.com/what-goes-determining-cars-destination-delivery-fee-1758763. And the Kelley Blue Book advises that "[m]anufacturers calculate destination charges" by taking "the cost of shipping all vehicles on the line" and "equaliz[ing]" it "so the fee is equal for all car-buyers." Kelley Blue Book, *What Are Destination Charges?* (Feb. 3, 2021) (incorporated by reference at App. 133 n.26), https://www.kbb.com/car-advice/what-are-destination-charges.

Likewise, Cars.com informs consumers that the destination charge "isn't a way for manufacturers to try and pad their prices upwards" and the increases seen in recent years instead "reflect[] the increased costs of logistics" and fuel. App. 161. And Autolist explains that "[a]utomakers levy [the destination] charge in order to recoup the expenses associated with preparing a vehicle for transportation at the factory [and] transporting it to the dealership," App. 162, and that the charge "is a flat fee that the automaker calculates based on the average cost of shipping a vehicle," Autolist, *What Is a*

*Destination Charge on a Car?* (Apr. 14, 2022) (incorporated by reference at App. 130 n.22), https://www.autolist.com/guides/what-is-a-destination-fee.

Third, the Complaint points to the well-publicized background and purpose of the requirement that destination charges be disclosed, which show that the destination charge has been understood to exclude cost for as long as stickers have been required. As alleged in the Complaint, leading up to the passage of the Automobile Information Disclosure Act of 1958 (AIDA), 15 U.S.C. § 1231, *et seq.*, Congress conducted a lengthy investigation into the inclusion of profit in destination charges, termed "phantom freight" charges, that Congress was concerned "require[d] the public to pay an inflated and unrealistic fee for freight charges that are not in truth incurred." App. 218 (emphasis omitted). That investigation allegedly led all three major auto manufacturers (Ford, General Motors, and the predecessor to FCA, Chrysler) to exclude profit and "average out" their charges as a matter of consistent practice across the industry.[4] Thus, when Congress undertook passage of AIDA and required disclosure of "the amount charged to the dealer for [] transportation," 15 U.S.C. § 1232(f)(3), it did so with the understanding that, as a "result of a lot of work by [Congress]," the "destination charge" to be disclosed is "an average transportation charge" that was "within a few dollars of what it costs to go from the assembly plant to any given area." App. 263. So while the text of AIDA is silent as to profit, the legislative history, as set forth in the Complaint, plainly

---

[4] The legislative history also shows that Congress policed adherence to this practice. *See* App. 264 (letter from Senator Monroney requesting an explanation from General Motors as to why their charges have increased from "the proper destination charge").

6

demonstrates that the charge to be disclosed was understood by Congress and the automotive industry to exclude profit. The contemporary sources quoted in the Complaint, *see supra*, provide a more-than-plausible basis to believe that understanding has endured and that consumer understanding of destination charges today aligns with what Congress and the industry have understood and consistently messaged since the 1950s.[5]

The majority disregards all of these allegations and removes the term "charge" from its context to produce the platitude that "no reasonable consumer would be surprised to learn that a 'charge' includes profit."[6] Maj. Op. at 4. But that is not Appellants' contention. Rather, they argue, and sufficiently plead, that consumers

---

[5] To be sure, Appellants do not claim that FCA violated AIDA. Its legislative history is offered only as additional factual matter to support their allegations regarding what consumers understand. But, for avoidance of doubt, I note AIDA was not meant to establish a ceiling for required disclosures. Rather, it provides the floor—a means to "assure that the purchaser would start the negotiations with the minimum necessary information." App. 276. And "it is well-settled that where a federal statute provides only a floor, such a statute does 'not stand in the way of a stricter standard that the laws of some States provide.'" *Frank Bros. v. Wisc. Dep't of Transp.*, 409 F.3d 880, 895 (7th Cir. 2005) (quoting *Atherton v. FDIC*, 519 U.S. 213, 227 (1997)); *see also Wyeth v. Levine*, 555 U.S. 555, 573-74 (2009) (rejecting the argument that "[o]nce the FDA has approved a drug's label, a state-law verdict may not deem the label inadequate").

[6] The majority also suggests that "charge" is not actionable because the term is merely "inherently ambiguous," and not "inherently misleading." Maj. Op. at 4 n.2 (quoting *Williams v. Chase Home Fin. LLC*, No. A-3614-12T3, 2014 WL 2050517, at *2 (N.J. Super. Ct. App. Div. May 20, 2014) (per curiam)). But an unreported, per curiam decision does not dictate "how the New Jersey Supreme Court would rule" on this issue. *Alpizar-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018). The New Jersey Supreme Court has ruled that "the capacity to mislead is the prime ingredient of all types of consumer fraud." *Cox*, 647 A.2d at 462. And as relevant here, an ambiguous statement may have the capacity to mislead even if it is not inherently misleading. *See id.*

7

understand a "destination charge" in the context of a vehicle purchase to exclude profit, so FCA's practice of inflating that charge to include it has "the capacity to mislead."

That brings us full circle to the applicable standard under the NJCFA. In support of its conclusion, the majority relies on district court cases that either do not apply New Jersey law or involved complaints that include only conclusory allegations. *See* Maj. Op. at 5 n.4. In *Gunn v. FCA US, LLC*, for example, the court analyzed a similar claim. 2023 WL 5418736 (N.D. Cal. Aug. 22, 2023). But the *Gunn* court applied California law, which requires consumers to show both (1) that they were "*likely* to be deceived" or misled by a defendant's conduct, *Zhang v. Superior Ct.*, 304 P.3d 163, 174 (Cal. 2013) (emphasis added), and (2) "actual reliance" on the assertions, *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 888 (Cal. 2011). In *Beeney v. FCA US, LLC*, the court addressed the laws of eleven other states with more onerous requirements than New Jersey.[7] 2023 WL 6962116, at *4 (D. Del. Oct. 20, 2023), *aff'd*, No. 24-2519, 2025 WL 2556242 (3d Cir. Sept. 5, 2025); *see, e.g.*, *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (applying Florida law and requiring that an act be "likely to mislead"); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (applying Texas law and requiring the act be the "producing cause" of a plaintiff's loss). It also applied a "reasonable consumer test," asking whether such a consumer "would be misled" (not could be misled) by the practice. *Beeney*, 2023 WL 6962116, at *4. And, lastly, in

---

[7] In that case, the court analyzed claims under Florida, Georgia, Illinois, Iowa, Michigan, Missouri, New York, North Carolina, Ohio, Pennsylvania, and Texas law. *Beeney*, 2023 WL 6962116, at *4.

*Romoff v. Gen. Motors LLC*, 574 F. Supp. 3d 782, 789 (S.D. Cal. 2021), *aff'd*, 2023 WL 1097258 (9th Cir. Jan. 30, 2023), the underlying complaint offered purely conclusory statements and no factual allegations whatsoever about what consumers understand of the destination charge, why they have that understanding, or the existence of any industry practice. At oral argument, even FCA's counsel conceded that, in *Romoff*, "they made far more conclusory allegations about what reasonable consumers would understand." Oral Arg. Tr. 31:08-32. But at the motion to dismiss stage, where the inquiry should turn on the sufficiency of the instant complaint and the application of law from the relevant jurisdiction, neither another court's disposition of a different and patently deficient complaint nor its application of a different legal standard should control.

In sum, on the face of the Complaint before us, and under applicable New Jersey law that says an act can be proscribed if it has the capacity to mislead, the District Court's conclusion that FCA failed to state a claim under NJCFA was in error, as is the majority's affirmation of the District Court's dismissal. While the majority's decision resolves this case, we are not the final arbiters of New Jersey law. Nor do our decisions on pure state law questions bind the New Jersey courts. So should the occasion arise, the courts of New Jersey can make the necessary course correction.

\*    \*    \*

For the foregoing reasons, I respectfully dissent.

9